F. G. DRESSIE, Administrator, Respondent, v. ST. LOUIS, KANSAS CITY & COLORADO RAILWAY CO., Appellant.

**Kansas City Court of Appeals, June 28, 1910.**

1. **CONTRIBUTORY NEGLIGENCE: Machinery: Safety Appliance: Statute.** Notwithstanding the statute (Sec. 6433, R. S. 1899) requires machinery in all manufacturing and mechanical establishments to be guarded, an employee may be guilty of such contributory negligence, where it is not guarded, as to prevent his recovery of damages.

2. ———: ———: ———. If there are two ways open to a man of experience and he voluntarily and knowingly chooses the unsafe one, he is guilty of contributory negligence.

3. ———: ———: ———. D was an experienced employee of a railway company in charge of a gasoline engine used to pump water from a well into a tank for the use of the company's locomotives. He was instructed not to repair the engine, but if repairs were needed to write or telegraph his superior about twenty miles away. The engine became out of order by reason of two loose and worn nuts on bolts, and D, though he knew the safe way was to stop the engine, undertook to tighten them while it was running, and in doing so his clothing was caught in a cog wheel and his hand drawn in and injured. *Held*: That he was guilty of contributory negligence and could not recover.

Appeal from Gasconade Circuit Court. —*Hon. R. S. Ryors*, Judge.

REVERSED.

*W. F. Evans* and *Sebree, Conrad & Wendorff* for appellant.

(1)    Plaintiff's injury was caused wholly and solely by his own carelessness and negligence in voluntarily and unnecessarily and contrary to instructions placing himself in contact with the rapidly revolving machinery. Huss v. Bakery Co., 210 Mo. 44; Spiva v. Coal Mining Co., 88 Mo. 68.    (2)    Where there is a safe and an unsafe way of performing the work in which the servant is engaged, and the servant adopts the dangerous way and is injured he cannot recover. Smith v. Box Co., 193 Mo. 715; Moore v. Railroad, 146 Mo. 572; Montgomery v. Railroad, 109 Mo. App. 88; Shore v. Bridge Co., 111 Mo. App. 278; Dunphy v. Stock Yards Co., 118 Mo. App. 506.    (3)    If it was plaintiff's duty to tighten the bolts in the manner in which he says he was tightening them at the time of his injury, then whatever danger there was, was open and obvious and incident to his employment, and he cannot recover. Slagel v. Lumber Co., 138 Mo. App. 432; Knorp v. Wagner, 195 Mo. 637; Pulley v. Standard Oil Co., 136 Mo. App. 172; Meyers v. Glass Co., 129 Mo. App. 556; Blundell v. Mfg. Co., 189 Mo. 552; Mathis v. Stock Yards Co., 185 Mo. 434.    (4)    Plaintiff was violating his positive instructions in regard to the operation of the engine at the time of his injury, and that violation of instructions was the proximate cause of his injury and he cannot recover. Yongue v. Railroad, 133 Mo. App. 141; Francis v. Railroad, 110 Mo. 387; Schaub v. Railroad, 106 Mo. 74; 20 Am. and Eng. Ency. Law (2 Ed.), 105; 26 Cyc. 1267; 3 Elliott Railroads, sec. 1267; Van Camp v. Railroad, 141 Mo. App. 344.

*Harkless & Histed* for respondent.

(1)   Where the act in question is not so glaring as to deter a reasonably prudent man in the exercise of ordinary care, from engaging in it, contributory negligence is not a defense.   Harrod v. Packing Co., 127 Mo. App. 363.   (2)   This being a statutory action founded upon the charge that the defendant had failed to safely guard and shield the gearing, shafting and belting, and the proof showing that defendant had failed in this respect, assumption of risk is not in the case.   McGinnis v. Rigby, 122 Mo. App. 227; Stafford v. Adams, 113 Mo. App. 717; Lore v. Mfg. Co., 160 Mo. 608; Curtis v. McNair, 173 Mo. 280.   (3)   The deceased was not guilty of contributory negligence.   Harrod v. Packing Co., 127 Mo. App. 363; Henderson v. Kansas City, 177 Mo. 477.   (4)   The doctrine of "two ways" of doing a thing has no application to this case, as there was but one way open to him under the evidence to have properly performed his duty, and that way is shown by the evidence to have been along prudent lines.   Benedict v. Railroad, 104 Mo. App. 222.

ELLISON, J.—Plaintiff is the ·administrator of the estate of P. F. Dressie, who originally instituted this action, but having afterwards died, it was revived in the name of plaintiff as administrator.   The action was brought by deceased for the loss of one of his hands, which he charges was occasioned by defendant's negligence in failing to guard certain machinery as required by section 6433, Revised Statutes 1899.   No negligence on account of there not being any notice, was charged.   The judgment was against the defendant in the trial court and it, in due time, appealed.

It appears that defendant had a small ten-horse power gasoline engine situated over a well, with which it pumped water from the well into a tank nearby, from which it supplied locomotives in use on defend-

ant's railroad. The engine was covered by a small shed structure about twelve feet square, and deceased, an experienced man in such work, was the sole employee in charge thereof. The petition charges: "that the machinery among other things consisted of a large cogwheel, and a smaller cogwheel working therein, and attached to the cogwheel was a gearing commonly called and designated a friction clutch, all of which machinery was in rapid motion and required to be kept in rapid motion and propelled by an engine, and that the cogwheels and friction clutch were each then and there dangerous to persons employed thereat while engaged in their ordinary duties, none of which were then and there safely or securely guarded. That the plaintiff on April 13, 1907, while engaged in the ordinary duties in operating and running said machinery, and while in the act of tightening down certain nuts on the bolts, constituting a part of the machinery, came in contact with the friction clutch, and with the cogwheel, and his clothing become caught therein, and he was with force and violence jerked into and drawn down onto the cogwheels, and as a result thereof his left hand was crushed and mangled so that it had to be cut off half way between the wrist and the elbow, and that he was bruised and injured in the left arm and two ribs on the left side were broken. That this injury was directly brought about by the negligence of the defendant is failing to securely guard said friction clutch and cogwheels, all in violation of section 6433 Revised Statutes 1899."

The statute just mentioned reads as follows:

"Sec. 6433.—The belting, shafting, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible,

then notice of its danger shall be conspicuously posted in such establishments."

We pass by several points of defense made by defendant, including one that the statute does not include the engine in question, since it was not in or a part of a "manufacturing" or "mechanical" establishment. The branch of the defense which disposes of the case is that of contributory negligence. That one may be guilty of contributory negligence in an action under that statute, we think is generally understood. [Huss v. Bakery Co., 210 Mo. 44; Millsap v. Beggs, 122 Mo. App. 1.]

Deceased was a witness in his own behalf and it is his testimony which defendant contends shows him to be without right to recover. The immediate cause of the injury was deceased's attempt to tighten two nuts on certain bolts on the engine while it was running. It appears that a Mr. Funke and a Mr. Gumphrey were at a small town twenty miles away and that they were in control of deceased as an employee and that one or both of them had instructed him that whenever anything became wrong with the machinery he was to inform them by telegraph or letter and they would immediately come and put it in order, and this he had several times done and they had immediately responded. He stated that they "never missed me once."

There were two nuts on two bolts which held a metallic cap over a bearing near a small cogwheel. On the morning of the accident, deceased noticed that these nuts would become loose and he would tighten them down without stopping the pump. It seems there was a nut on each end of the bolt and he would tighten them by taking a wrench in each hand, using one to keep the bolt from turning by clasping the lower end, and tightening the upper one with the other. While engaged at this, his clothing came in contact with a cogwheel and he was drawn into such position as that his hand got caught and the injury resulted. It was conclusively

shown that deceased's duties consisted in keeping the engine free from dirt, filling the oil cups and tightening a nut, if needed. All of this could, of course, be done better and more safely when it was stopped than when running the pump, and such was the evidence, including his own, and such was his instruction. He testified that on the day he was injured, the bolt was out of order, and he had "considerable trouble to make the pump work"; it "kept working loose; I probably tightened that bolt half a dozen times that morning and the last time I tightened it I got caught." It seems that when the bolt would "work or jar loose" it would allow parts of the machine to separate and the pump would stop. It would allow the "box that held the main shaft to pound up and down." The reason the nuts became loose, as stated by him, was that they had been in use a great while and had gotten loose on the bolts. "They were old and worthless."

Notwithstanding this knowledge of the condition of the engine and notwithstanding his instructions not to attempt any repair himself, but if anything was out of order to send for the "boss" at Eldon; and notwithstanding he realized and appreciated the fact that it would be safer to stop the machine before undertaking to remedy the defect, he did neither, and undoubtedly it is to this disobedience that his injury should be attributed. When it is considered that he was an experienced man in such business and was in sole charge of the engine and that no superior was near to direct or control his movements, it becomes manifest that he has only his own imprudence to charge with his misfortune.

But he has what was termed at the argument an excuse for his action. He was hurt on Saturday, and the day before he had talked with Funke at the depot, as he was passing through, and told him that the pump was working bad, and Funke said " to keep it full if I possibly could and that he would be up on Monday and

overhaul the pump." He did not tell Funke why it was working badly, for he said he did not know, but that he did know he could "hardly keep sufficient supply," and that "it was in such shape that it would not work right." He did not mention to Funke the condition of the nuts and bolts which later led to his injury. The only reason given for not stopping the engine before attempting to tighten the nuts was that it took from twenty minutes to a half hour to start again and that he did not feel that he could lose that time. He said that he knew to stop the engine was the safest; and when asked if he did not know there was danger in doing as he did, he answered that "I did not stop to think that matter over, or I surely would have shut down." Other witnesses in his behalf stated the safe way, or the safest way, would have been not to have attempted to do the work while the machine was running. Now in view of the situation and his instructions, which he does not pretend were recalled, in view of the fact that he knew that he had the free use of the telegraph whereby he could have had Funke on the first train, it seems to be clear that what is stated as an excuse does not relieve him at all. The controlling facts remain that he had been directed what to do and what not to do, and though an experienced man at the business, he negligently and disobediently pursued a different course; and that while he had been directed to report and apply for relief, he chose to substitute his own will and to adopt what he knew was not that of his employer; and while he knew full well that the prudent and safe way was to stop the engine before undertaking to tighten the nuts, he chose the unsafe way. He was undoubtedly guilty of contributory negligence. [Smith v. Forrester-Nace Box Co., 193 Mo. 715, 737.]

The foregoing considerations lead to a reversal of the judgment, and it is so ordered. The other judges concur.